UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

UNITED STATES OF AMERICA,                CASE NO. 00-6047-CR-ZLOCH

    PLAINTIFF,

V.                                       **NIGHT BOX
                                         FILED**

SEAN DIXON,                              APR 2 1 2000

    DEFENDANT.                         CLARENCE MADDOX
                                         CLERK. USDC / SDFL / FTL
_____/

### DEFENDANT DIXON'S NOTICE OF FILING COMPLETE TRANSCRIPT OF PRE-TRIAL DETENTION HEARING MEMORANDUM IN SUPPORT OF REASONABLE BOND BEING SET

    DEFENDANT, SEAN DIXON, hereby files, pursuant to the Court's order, the complete transcript of the pre-trial detention hearing which took place before the Magistrate Judge on March 6, 2000, and in support of this Court setting reasonable conditions of bond, states the following:

    1. On March 6, 2000, a hearing was held before the Magistrate Judge upon the government's request for pre-trial detention. The Court found the Defendant to be a citizen of the United Kingdom, but a permanent resident of the United States for most of his life[1].

    2. The Defendant's mother lives in Sunrise, Florida, and his four siblings reside in New York. Defendant has four children, three of whom reside with their mother

---

[1] Defendant was born March 9, 1966, and is currently 34 years old.



in Fort Lauderdale. The fourth child lives in Atlanta with the child's mother.

The Defendant served in the United States military.

The Defendant has been employed by Crawley American Transportation for the past eight years.

The Court specifically found that Defendant does not appear to constitute a risk of flight[2].

3. Nevertheless, the Court ordered Defendant detained as a danger to the community due to the nature of the charges. There are reasonable conditions of bond which may be set in this case, and there is no evidence that Defendant constitutes a danger to the community.

4. A review of the detention hearing transcript, beginning at page 21, reflects that the government's allegations against Sean Dixon are based upon the testimony of Cecil McCleod who himself was a defendant in a case and, as part of a plea agreement, is cooperating with the United States government.

5. Sean Dixon is charged only in Counts I through IV, Counts I and II being conspiracy charges, Count III being importation, and Count IV being possession of the same cocaine. The bulk of the evidence in the case consists of Title 3 intercepts against Mr. Booker[3].

6. With respect to Sean Dixon, the evidence in the case consists only of

---

[2]Detention order, paragraph 3.

[3]See page 22 of transcript.

2

cooperating witnesses. The government also claims, at page 22 of the transcript, to have evidence of phone calls between Sean Dixon and co-defendant James Booker. Those phone calls are unrecorded. The government asserts that Mr. Booker and Mr. Dixon were friends. The fact that phone calls are made without any content of the phone calls is of little help to the government's case.

7. The government concedes that Sean Dixon has no criminal record, at page 22 of the transcript, only a prior arrest in 1991 for which no charges were filed.

8. The Indictment's allegations reflect the alleged criminal conduct with respect to Sean Dixon occurred on January 18, 1996. Sean Dixon is not charged with any other activity aside from the overall conspiracy and the substantive counts which occurred on January 18, 1996.

9. The Magistrate Judge ordered detention based upon the government's claim, at pages 22 and 23 of the transcript, that Sean Dixon, at the time of his arrest at his home in the middle of the night, was found in possession of a loaded Tech-9 firearm. There are no allegations that this firearm was illegal. There are no allegations that this firearm was ever used in any wrongful conduct. There are no allegations that Sean Dixon was ever involved in any type of violence. There are no allegations that Sean Dixon ever encouraged, supported, or did anything to further any suggestions of violence towards anyone at anytime with respect to this case.

The firearm is legally owned and was merely in the defendant's home at the time of his arrest. Moreover, the firearm bears no legal or logical relevance to the

3

case. Testimony or evidence regarding this firearm should be prohibited as it bears no relevance to the charges in the Indictment.

10. The government concedes, at page 22 of the transcript, that most of the evidence in this case is a result of a wiretap between Cecil McCleod and co-defendant Booker. There are no conversations between Booker and Dixon.

11. The government alleges, at page 26, that Sean Dixon worked closely with Booker and ran errands for Booker. However, the government has presented no evidence of what Sean Dixon did that was illegal other than a conclusion by a cooperator who will claim that Sean Dixon was a "look-out." There is no independent evidence from any police official of any improper conduct by Sean Dixon.

12. So far in this case, the government has refused to disclose any discovery material on Cecil McCleod, and has delayed turning over any discovery regarding the *Giglio* material and deals offered to all of the witnesses in this case.

13. The government's allegation at page 28 that the testimony of the cooperating witnesses concerning the cocaine importation is corroborated by telephone toll records showing contacts between Cecil McCleod's phone and Sean Dixon's phone are of little value in light of the fact that there are no recordings of what was said between Dixon and McCleod.

14. At pages 28 and 29 of the transcript, the government admits that but for the discovery of the firearm in Defendant's residence at the time of his arrest, the

government would probably be recommending some type of corporate surety or 10% cash bond. A 10% cash bond is what is reasonable in this case.

15. The agent who testified at the detention hearing, at page 60 of the transcript, admits that no drugs were seized in the January 18, 1996 importation or possession which is the only substantive charge against Sean Dixon.

16. Sean Dixon has resided in this community for over 20 years and has committed no act of violence towards anyone.

17. In light of the Defendant's strong ties to the community, his children and family residing in south Florida, his lack of criminal record, the fact that the allegations refer to 1996, and Defendant's employment at the same place for eight years, reasonable conditions of release should be set.

19. Defendant respectfully asks this Court to set reasonable conditions of bond which would include reporting requirements to Pre-Trial Services once a week by telephone and once a week in person, a $50,000, 10% bond, a $100,000 personal surety bond co-signed by the Defendant's girlfriend, Rebecca Mathis, with whom Defendant has resided for several years, and to be co-signed by Rebecca Mathis' father who owns a home in Broward County, Florida.

WHEREFORE, the Defendant respectfully moves the Court to overrule the granting of pre-trial detention, and set reasonable conditions of bond.

Respectfully submitted:

SCOTT W. SAKIN, P.A.
Attorney for Defendant Dixon
1411 N.W. North River Drive
Miami, Florida 33125
(305) 545-0007
Fla. Bar No. 349089

By: _____
Scott W. Sakin, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished to **Michael Dittoe, Esq.**, Assistant U.S. Attorney, Office of the U.S. Attorney, 500 E Broward Boulevard, Seventh Floor, Fort Lauderdale, Florida 33394 on this 24th day of April, 2000.

By: _____
Scott W. Sakin, Esq.